At this time we'll hear United States v. Broadcast Music Incorporated. Good morning. Good morning. Mary Helen Wimberly on behalf of the United States. May it please the Court. The narrow question presented in this appeal is essentially a question of contract interpretation, and specifically what types of music public performing rights licenses fall within the scope of the consent decree between the United States and BMI, and therefore are subject to the decree's restrictions, obligations, and protections from certain types of government enforcement. The government's answer is only those licenses that actually give users the right to perform the work. BMI's answer is it also includes so-called fractional licenses that do not in and of themselves give the right to publicly perform the work. Are fractional licenses not rights of public performance? No, they're not the right of public performance. We'd say they are a fraction of the right of public performance. So when we normally speak, when we say, for example, I'm going to If a person has a fraction, does that person possess a right of public performance as a term of art? I believe it possesses a fraction of the right of public performance. So if you're going to possess the entire right, we say you possess the right of public performance. If you possess a fraction of the right, then you possess a fraction of that right. And this is consistent with what this court held in Pandora, where the court was evaluating the definition of ASCAP's consent, or excuse me, repertory, which is defined in substance identically to the definition of repertory in BMI's decree. And this court said it does not, on its plain language, it unambiguously does not include subsets of rights based on partial grants from its affiliates. We are here asking the court similarly to hold that BMI's repertory How is this made plain in the consent decree? When the Because, you know, the courts are not supposed to change the consent decree or add to it or take something away. Exactly. And I think BMI's own language helps with this, saying that in 1994, the parties did not consider fractional licensing at all when they admitted the consent decree. Prior to 1994, the provisions as they existed in 1941 and 1966, they could only refer to full work licensing, because that predated the 1976 Copyright Act, which as BMI says on page 35 of its brief, is what allowed fractional licensing. So if on those versions, the right of public performance had to mean full work licensing and nothing changed in 1994, then after 1994, the same thing must hold true. So Judge Jacobs, I agree with you. There had to be some kind of an explanation or clear statement, and this is specifically spelled out in the American casualty case and the Maryland casualty case we cite in our reply brief. There had to be some affirmative statement that the meaning was supposed to change. Because there was none. Well, why doesn't your argument then lead to the conclusion that fractional licenses are not covered? That is our argument. By the consent decree, and therefore, nothing stops them from licensing them. Our reply brief did clarify that that is our argument. The point is, they are not within the consent decree's protections, and therefore protected, for example, from a government enforcement action. Well, they're not protected by government enforcement, so why don't you start a government enforcement action? Why don't we start a- Yes, you turn the lights on every day in the antitrust division. That's- yes, we certainly- that is something we can do. I mean, you can read the consent decree all you like, and you won't find anything expressly one way or the other. And you're saying that BMI is doing something that violates the antitrust laws, and the usual thing for the antitrust division to do when that happens is to start an enforcement action. Judge Jacobs, we haven't actually reached a determination about whether a collective fractional licensing would, in and of itself, as a sort of sidecar proposition outside of the consent decree, be a violation of the antitrust laws. And that's why we're opposing BMI's view, because BMI is saying that is incorporated in the consent decree, therefore, the Justice Department has approved it already. So what- Can you tell me what antitrust concerns develop as a result of fractional licensing? Like I said, the problem is BMI's view would preclude us from going into that analysis. What we looked at during the investigation was actually- During the investigation, you must have said, this is going to be a problem because there's been tradeoffs here with the consent decree and antitrust. So something caused you to be concerned about how fractional licensing would create antitrust concerns. What are those? This, just to clarify what the investigation was about, it arose in the context of partial withdrawals, which, again, is what this court found was not permitted by the consent decree under its plain language in Pandora. The subsidiary follow-up question was, okay, well, the other side was arguing that in order to effectuate partial withdrawals, we also need to be able to fractionally license. Otherwise, if the PROs are fully licensing our works and we fractionally- and we partially withdraw, then that would not effectuate our partial withdrawal. So it came in the context of ASCAP and BMI asking us to modify the consent decrees to allow both for partial withdrawals and fractional licensing. And the question we were evaluating was whether that was sufficiently pro-competitive to modify the consent decrees to allow for fractional licensing within, again, the confines of the decree. But isn't- wasn't the Pandora case an easier case or perhaps even an easy one because the certain users. And that's expressly barred by the decree and certainly by the structure of it. Well, ASCAP's- You have to make the license available to everybody. ASCAP's argument as to why that was not the case is what makes it analogous here. Go ahead. They said we were saying- they said we have to give the entire repertory to all users. We're not discriminating if we give the entire repertory to all users. And what's in the repertory is only the partial rights we happen to have received from our members. So if the repertory contains only those partial grants, we're not discriminating. So this court had to, as I said in the beginning of my argument, decide what is in the repertory. And it said the plain language of the definition of repertory, which includes all songs that in that case ASCAP had the right to license the right of public performance, does not unambiguously does not include subsets of the right of public performance. That's exactly what we are saying here. There it was based on subsets based on certain mediums, including new digital right media space. Here we're saying it's based on fractional interests by certain members. I'm not sure I understand what relief you want here. You've just agreed a few moments ago that the consent decree does not speak to fractional licenses. And so the district court order states that the decree neither bars fractional licensing nor requires full work licensing. You can't say that they're in violation of the consent decree, but you still can, as Judge Jacobs pointed out, sue for violations of the antitrust law in other respects and argue that this decree is silent. The district court didn't say that the decree gives them carte blanche to engage in fractional licensing. So what do you want from us? We want you to say, to reverse the district court's specifically, as it first of all says, that it does not require full work licensing because our argument is that it does for songs in BMI's repertory. If BMI has the right to fully work license a song, then that is what is in its repertory. Where are you finding that in the consent decree? Because you just said the consent decree is silent on this. Where does it require full work licensing? Nothing less. To be clear, I don't mean to say the consent decree is silent on it. I mean to say it's limited to the repertory. So Article 14A requires BMI to grant licenses for the right of public performance for compositions in BMI's repertory. It comes back to Judge Jacobs' first question that you responded to by saying that fractional license is not the right of public performance. Correct. So the BMI's mandatory full work licensing obligation exists in 14A but is limited to the repertory. But you agreed that when the parties agreed to licenses for the right of public performance, no one gave a thought to fractional licenses. Which we believe means that they did not include fractional licenses because they certainly didn't prior to the 1976 Act and the language did not change following 1976. So if the parties intended to change that, meaning they needed to use affirmative language to do so. And then, again, repertory in 2C is limited to the songs that BMI has the ability to offer full work licenses. So if it doesn't have that ability, those songs are outside the repertory and that's what we agree with BMI, that the consent decree does not govern. When you say fractional license, you mean a fractional license of the right of public performance. Correct. And, again, it's a fraction. It's a fraction of it, but it's a fraction of the right of public performance. The words you just used, you had to add a fraction of the right of public performance, which is what gave it that meaning. Or a fractional right of public performance. I can do it without the... Well, I think this is foreclosed by Pandora because it said the license for the right of public performance could not mean license for subsets of rights of public performance. Similarly here, it cannot mean rights for fractions of the right of public performance. So I don't see how there's a distinction between this case and Pandora, Your Honor. Let me ask you another topic, and that is that some of the amicus briefs here raise the consumer interest, that fractional licensing will increase the cost to consumers of purchasing music in different forms. Do you agree with that, and how does that work? I think that is a potential result because what fractionalizing does is it just creates more fractions that a user has to purchase, which is why we concluded they weren't sufficiently pro-competitive to alter the decree to allow. And they don't add value. They just add more things the consumer has to buy. So again, that goes to the modification question, whereas here we're really talking about the interpretation question, which we believe is governed by Pandora, the historical context of the decree, and BMI's own licenses, which on their face provide full work licenses now, as they always have. What we're speaking about practical matters. Am I correct in understanding that if the defendants are allowed to include fractional licenses within the bundle, there's a question about whether they would identify that for consumers so that they would know when they have the right of public performance and when, before they can publicly perform, they need fractional licenses from other parties? Which is not happening right now. BMI is not telling its users what it's giving them. Well, that gets to the question of who should have the burden of checking whether this is a full public performance license or a fractional one. Correct. Okay. But does that have an antitrust concern attached to it in any way, or is that just a function of how do we want to assign that burden? I think antitrust, of course, is grounded in competition. In order to evaluate your alternatives, you need to know what you have. So I think potentially it has some antitrust implications. When you rebut, if you have any further thoughts on that, by all means, share them with us. Well, I think, again, this refers back to the inherent problems of collective licensing. So we start there with saying there are antitrust concerns when you have a bunch of different otherwise competing licenses for a single price. And then the consent decree is intended to essentially codify the pro-competitive benefits that are keeping that on the right side of the antitrust laws. So the fractional licensing question arose in that context. Was it sufficiently pro-competitive to come within the confines of the conduct approved by the consent decree? We said it's not. And I'd just like to finish with noting that BMI has conceded that it must grant full work licenses when it has them. The only way for that to be consistent with the text of the decree is if licenses for the right of public performance means full work licenses. You've reserved three minutes for rebuttal. Thank you. We'll hear you then. Good morning. Good morning, Your Honors. Scott Edelman on behalf of BMI. Your Honors, if I could ask your indulgence and just take a step back to try to put this in context. The existence of what the government refers to as restricted split works, the fractional licenses that create the issues that they're concerned about, are not a phenomena that BMI has created. It's a function of the marketplace. When songwriters jointly create a new song, the copyright law gives them the right to use the song. The copyright of the song requires consent from both songwriters. And there are times when one songwriter joins BMI and another songwriter joins ASCAP or some other PRO. In such cases, BMI can license the fractional right of public performance, but it cannot license the fraction that it doesn't control. That's not a new phenomenon. There have been restricted split works going back at least to the Copyright Act of 1976. And in particular, foreign works are often held by co-owners on a restricted split work basis. Now, how has this been dealt with in the past? BMI and ASCAP have always included these works, these restricted split works, in their What do you mean, as fractions? Does somebody who wishes to play a song on the radio know and has a blanket license from BMI? Does that person know that it's a fractional license? So, Your Honor, no. I don't think they've cared, and it's never been a problem. Well, they should care, because they don't have the right to public performance. Here's why it's never been a problem in the past. Because they have a license from BMI. They have a license from ASCAP. They have a license from CSAC. And between them, they've got all the fractions, so they can play the song. And to our knowledge, this has never been an issue. Let's take a, you know, you will not permit somebody who's operating a pub or a pizzeria to play music on its speakers unless they have a license. And you're suggesting that the only safe thing for them is to have blanket licenses from everybody and his uncle. And that's the way everybody has proceeded, Your Honor. Because otherwise, people would need to check every time they needed to play a song, oh, is this a BMI song or an ASCAP song? That's not the way the market has operated. Music users have obtained license from all the licensees, and as a result, everybody has these so-called fractions and has had them for, since 1976, and they've always been included in the repertory, and the system has worked because people get licenses from all the PROs. So my point is, these, I'm using the shorthand, fractions, have always been in the licenses, and it was only when the DOJ, and we heard this in the subject of studying something else, took a look at the market that they came along and said, you know what, in the future, these fractions could create a problem as new PROs are coming out or some fractional owners might withdraw. And it was only then that they went back and read the consent decree and came up with a new interpretation that would result in all of these fractions that have been in the repertories since 1976 and said, we're giving you a year to restructure your operations because those cannot be in the repertories. Aren't there antitrust considerations associated with the idea that anybody who operates a pub or a pizzeria, in order to be able to play music, has to have a license from everybody who gives a blanket license? Otherwise they can't know whether they have a right to play anything. Your Honor, I think that's a function of the copyright law. And the copyright law says that if you want to play a song, you need to have a license in advance. Now, PROs solve that problem because, in effect, what that bar owner is able to do is – PROs, plural, solve that problem. BMI doesn't solve that problem. Well, BMI is one of the pieces that solves that problem. And its inclusion of the fractions in the repertory is part of what helps to solve that problem. Because if they fall out, then we've got chaos. And what the government is doing here is – they're not really troubled by the fact that we're including the fractions. We'll get to that. That's better for the music user. But they're trying to reread the consent decree, come up with a cramped reading that Judge Stanton rejected for what the right of public performance is. And by doing that, they're hoping that all of these people who have chosen to hold their works on a restricted split work basis will take this year and reorder their arrangements so that they can put their works back in BMI or ASCAP. Now, whether or not that's good policy, we think it's not. We think it's going to lead to chaos. We think it's mistaken. But it's certainly not in the four corners of the consent decree that BMI and ASCAP – that was amended in 1994 – that they concede never even contemplated this issue of fractional licensing. Can I just go back to Judge Jacobs' pizzeria for a question? And that is, the way I understand the consumer aspect of this is if Judge Jacobs does open up his pizzeria, as it sounds like he's interested in, that he better get licenses from all the PROs. You can't just get one from BMI, or you're risking a problem with ASCAP and the other ones. So is that what the consumer interest there is, that if you're going to open up a pizzeria, you better have the statutory licenses with all the different PROs? You better not miss one, because if you do miss one, and it's a split license, you can get sued. Is that what the consumer – That's the way the music industry has worked, because that's the only way that you know that you're getting everything. And if you don't have a license from one of the PROs, then you're in a situation where you need to, before you play a song, check, is this a BMI song? Is this an ASCAP song? If somebody comes into your bar and performs live music, before they perform each song, you need to check. So the way this market works is that music users necessarily – and this is putting the fractions aside – music users necessarily need to obtain a license from everybody. Now, the fractions – if you take the fractions and you say, BMI can't license them, which they're not even saying, they're just saying somehow we can license them, but we have to license them in a different license – In that part of your repertory. Because that way the consumer would know that they've only acquired a portion. I mean, this is my concern in trying to understand what the antitrust consequences are here. Presumably, if a consumer comes to you and says, we only want that part of your repertory in which you can give us full licenses, you would say, we don't offer that. We only offer the full bundle, right? Your Honor, I don't know what the answer to that is, if somebody came and asked us for that, but I don't know why a consumer would prefer to have all the full stuff plus the fractions. Well, because they want to know which ones they can play without having to go to ASCAP or anybody else. The concern is that by offering only the package that is both full right of public performance and partial right, all the entities in this industry basically have an arrangement with one another that it's buy from all of us. Is that the antitrust concern here? Well, nobody needs to buy from all of us. They can buy from just one. And take their chances. And they can get the information. Be foolish. No lawyer would recommend to anybody that they then play any part of that without doing considerable research. Your Honor, what I can tell you is that as of now, this issue with fractional, somebody having a holdup right based on the fractions has not been an issue. I can also tell you that BMI is hard at work at coming up with more transparency to provide as much information as we can about the ownership structure and which of these works are restricted split works or not. Technology is evolving. As the market is evolving, we're trying to come up with that information. Look, all we want to do is to provide all of the rights that we have, all of the rights of public performance, whether full or fractional, we want to provide everything we have to consumers, and we want to come up with transparency to give them as much information, and we're working on it as fast as we can. Let me ask you to get back to the case before us. The district court said that you weren't required to do full work licensing, but neither did it say that the consent decree gives you a benediction for partial licensing. Why do we need to do anything, and why isn't this just left to any enforcement action the antitrust division wants to bring against you for partial licensing, to the extent they can claim it's an antitrust violation? Well, Your Honor, the government's position is that if fractions continue to be included in the repertory, that that is a violation of the consent decree. And it was that position that Judge Stanton rejected. What I'm saying is, do you think that the decree to language, the consent decree, neither bars fractional licensing nor requires full work licensing, allows you to argue that it's the consent decree that authorizes you to bundle less than full work licensing within your package? Well, Your Honor, for one thing, we've taken the position that where we have the ability to grant a full work license, we believe that the consent decree requires us to do that. No, I understand that. We believe that there is nothing Do you have immunity that the consent decree gives you some kind of protection for what you're doing? I don't think that the consent decree gives us immunity to the extent we're violating the antitrust laws. But there's nothing about including fractional licenses, to the extent we've been doing it for the last however many years, that violates the consent decree or the antitrust laws. And the limited question here is, there's nothing that violates the consent decree. That's the issue. We want a declaration, we want an affirmance of Judge Stanton's declaration that the practice that we've been engaged in does not violate the consent decree because When BMI issues a blanket license, it is acting pursuant to the consent decree, correct? When we issue any license, we're granting a consent decree. The blanket license is not something that's expressly referred to in the consent decree. That creates yet another problem with the government's position because Are you authorized to issue a license other than pursuant to the consent decree? I don't think there's anything that says no, but there would probably be In your view, the fractional license is being offered pursuant to the consent decree? Yes, Your Honor. And so if the consent decree does not cover partial licenses, what is it? You're not able to sell it? You're not selling it? No, the government is conceded It's a violation of the consent decree? We can offer a separate license with the fractions because there's nothing They concede there's nothing that prohibits us from offering fractions. And that just shows the inanity of the argument. You saw what happened. The amici came in and they said, wait a minute. We don't want to have to get a separate license for fractions. That makes no sense at all. They'll still have all the same issues needing to get the fractions from somebody. And they'll have the same problem if a pianist comes in in the cocktail hour and is playing stuff. Nobody knows whether it's covered by this license or that. Because that's a problem that results from the fractions. And it's a problem we're helping to solve by including the fractions in the existing license and helping to solve further by getting additional transparency with respect to the information. But the government's position that you can't do it within the decree, you can do it outside the decree, it solves nothing and it makes no sense. The government's reliance on the Pandora case is just wrong. It sounds like you can charge more money because now you'll have two licenses you can sell. Your Honor, that's not what we're looking to do. I understand. We just want to keep People don't usually object to it. Your Honor, I'm not going to say it hasn't been thought about, but that's not what we want to do. We just want to keep doing We'd like to get some points with this panel for the next one. But we want to keep doing what we're doing, which is everything we have, we pass on to the music user. And yes, music licensing is more complicated than I could imagine when I got into this and figuring out the ownership is tough. We're trying to create more transparency. But the government's position, it's not in the consent decree. It had nothing to do with fractional licensing. What do you do with your adversary's analysis of the Pandora case? First of all, it's just wrong to say that the Pandora case had something to do with the phrase, the right of public performance. It didn't. That phrase was not at issue. What Pandora, and I think Your Honor made this point in answer to the question, that was about discrimination between users. And there was a nondiscrimination clause, and it was dealing with different language and a different decree. In that decree, there was a nondiscrimination clause. As there is in ours. Yes. And Judge Stanton came out the same way in our case in Pandora, and he distinguished it here because we want to give everything to everybody. We're not discriminating between users. Everything that we have, everything that we can get to the full extent that it gives rights, it'll get rights. Now, Your Honor started off with a question about the right of public performance. And I want to echo what I think was underlying Your Honor's questions. The right of public performance is a term of art in copyright law and in the consent decree, and it's something that Judge Stanton is very familiar with because it gets used all the time. It's been on this case since 1994. And I can say the right of performance, whether full or fractional, it is not something that by its terms can only be a full right. If I had a . . . Meaning it's referring to a kind of right. Referring to a kind of right. And if a consumer said to me, I want all the rights of public performance that you control, and I said to them, gave them the fulls but not the fractionals, they'd kill me. I mean, the right of public performance is referring to a type of right. And Judge Stanton properly read it that way. And when you read it that way, all of the arguments about the consent decree fall away. ARMOR requires very strict construction about if something was meant to be prohibited, it should be prohibited. Here we're dealing with shadows of words to change an interpretation that has been followed since at least 1976. Well, the government says they haven't looked into it. They had no occasion to look into it. And as soon as they did, the issue was presented. Well, after a year of study of the policy effects of how you could take this rule and somehow affect the behavior of songwriters, not us. That's not the basis for construing a consent decree. If the government thinks that there should be a change, they should file an action against somebody. Probably not us. Or alternatively, there should be legislation. But the consent decree is a contract between us and the government, and they acknowledge never intended to deal with fractional licenses. Thank you. We'll hear Rebecca. Thank you, Your Honors. I'm going to try for five quick points. First, Pandora. Judge Jacobs, you mentioned again that it involved a discrimination provision, but if you look at the basis for the decision on pages 77 and 78 of that opinion, it did not talk about the discrimination provision. It talked about the definition of ASCAP's repertory. And among other things, it said that ASCAP has essentially equivalent rights across all songs in its repertory. That has nothing to do with discrimination. That has to do with what it receives under the meaning of repertory. And then tracking the language of the repertory definition, it said appellants would have us rewrite the decree so that it speaks in terms of the right to license the particular subset of public performance rights being sought by a specific user. And it said it was foreclosed by the plain language of the decree. So it is that reasoning and analysis of that provision of ASCAP's decree, which is substantially identical to the provision in BMI's decree, that we're saying compels the reading in this case. Secondly, I did not hear Mr. Edelman make any points regarding or disputing that originally, in 1941 and 1966, the parties were only contemplating full work licensing because that was the only thing that existed. That cuts two ways, doesn't it? I believe that only cuts one way, which is that is the only way that is what the parties were referring to. And if they intended to bring more in to the decree in 1994, and this is the language from American Casualty Company and Maryland Casualty Company, it was on the burden of the parties to make a clear statement  They did not, and as we both said, we didn't contemplate fractional licensing in 1994. Therefore, we did not change the meaning of the decree in 1994. Thirdly, BMI said it has always offered fractions in its repertory. We disagree with that proposition. What BMI is referring to is its system of fractional payments, which is this court recognized in AEI, and again, in the DMX case, does not have to be coextensive with fractional licensing. In fact, you can have a full work license and then reduce it on the basis of direct licensing and only pay according to the fractions that that PRO controls. But that does not change the scope of the license. And if there's any doubt on this point, I would turn this Court's attention to JA-131, BMI's radio license, Section 3A, where BMI grants licensee a non-exclusive through-to-the-audience license to perform publicly all musical works in the BMI repertory during the term. There is no indication or limitation as only those fractions that BMI controls. Fourth... How is it going to... I'm going to ask a policy question, which really is not our business. Whatever the consent decree says, it says. But how on earth is it going to improve the availability of music to all users and the compensation of everyone who creates music if fractional licenses can't be included by BMI or ASCAP or any of the other PROs? Then it will just mean that people who want to use music won't know how to assemble the licenses to perform it publicly, and they won't be able to aggregate them by piecing them together by getting blanket licenses from several PROs. And this was going to be my fourth point, so I'm glad you brought it up. And in response to Judge Raju's question earlier about the informational burdens, we're saying that it's more efficient to put the burden on BMI to figure out how it can either clear those rights, perhaps enter a reciprocal relationship with ASCAP like it does with the foreign PROs, but the burden should rest with BMI, not with the user. In terms of what this kind of sidecar fractional licensing scheme could look like, that's purely hypothetical. BMI hasn't expressly said it would do that, nor has it said what it would look like. So in that sense, we agree with Amiki that that question is not presented in this case. But what we are asking this court to do is to reverse because we believe it is inaccurate. You want to encourage BMI to sit down with all of its competitors and figure out how to deal with this. No, we're certainly not asking. We've suggested that one of its existing practices is to reciprocally license songs within its repertory with foreign PROs at this time. It's already doing that. In our closing statement at 20, we just suggested that's a possibility, that it could enter a reciprocal relationship. You wouldn't stand here and say they could do that? Well, we suggested it in our closing statement. But again, these questions all go to the consequences and perhaps the wisdom of modification. All of these policy questions are really concerned with modification of the decree and what it should be construed to provide, not what exactly it provides now. And that's my final point is we disagree with the district court when it says it neither prohibits fractional licensing nor requires full work licensing. It does require full work licensing for songs in BMI's repertory and therefore prohibits fractional licensing in lieu of those songs. It also prohibits BMI from including fractional interest in its repertory. And we believe this court should reverse on those bases. Thank you. Thank you. Thank you both. We will reserve decision.